Argued and submitted June 15, reversed and remanded July 26, 2000

Nagendra TIRUMALI;
Parimali Tirumali; Kateland Wells; Tony Milhizer;
Connie Kiener; Geoff Levear; Joyce Levear;
Eiko Politz; Wes Ross; Dorothy Ross;
Gail Ingalesbe; Russ Carson and Esther Tolls,
*Petitioners,*

*v.*

CITY OF PORTLAND,
*Respondent.*

(LUBA 2000-005)

Jerry L. WARD;
Nancy A. Ward; Nagendra Tirumali; Parimali Tirumali;
Kateland Wells; Tony Milhizer; Connie Kiener;
Geoff Levear; Joyce Levear; Eiko Politz; Wes Ross;
Dorothy Ross; Gail Ingalesbe; Russ Carson and Esther Tolls,
*Petitioners,*

*v.*

CITY OF PORTLAND,
*Respondent,*

*and*

Linda GAETH
and Steven Orcutt,
*Intervenors-Respondents.*

(LUBA 2000-007)

David JUBITZ;
Mary Jubitz; Mary Lou Stribling; Donald Berg;
Carole A. Cooke; Thomas Malloy; Eleanor Malloy;
Jeffrey M. Lang and Ramona Svendgard,
*Petitioners,*

*v.*

CITY OF PORTLAND,
*Respondent,*

*and*

Linda GAETH
and Steven Orcutt,
*Intervenors-Respondents.*

(LUBA 2000-018; CA A110016)

7 P3d 761

Daniel Kearns argued the cause for petitioners. With him on the brief was Reeve Kearns, PC.

Frank Hudson, Deputy City Attorney, argued the cause and filed the brief for respondent.

No appearance for intervenors-respondents.

Before Kistler, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

KISTLER, P. J.

## KISTLER, P. J.

Petitioners filed separate appeals to LUBA from the City of Portland's issuance of a residential building permit, and a revised permit to respondents Gaeth and Orcutt, as well as an explanatory letter from the City's planning director concerning the permits. Petitioners contended, *inter alia*, that the city erred by allowing respondents to use an artificial, earth-filled "finished grade," rather than the "original grade" of the sloping property, in fixing the "base point" for measuring the height of respondents' building. Consequently, according to petitioners, the height of the building will substantially exceed the maximum height for which the Portland City Code (the Code or PCC) provides.

The City moved to dismiss the appeals for lack of jurisdiction on the ground that none of the three actions was a "land use decision" subject to LUBA's review. The City asserted that each action came within ORS 197.015(10)(b)(A) or (B), which, respectively, exempt from review a decision:

"(A)   Which is made under land use standards which do not require interpretation or the exercise of policy or legal judgment; [or]

"(B)   Which approves or denies a building permit issued under clear and objective land use standards."[1]

LUBA granted the City's motion and dismissed the three appeals. Petitioners seek our review, and we reverse.

Two provisions of the Code play a role in our discussion. PCC 33.930.050 relates to the measurement of building height and describes two kinds of "base points":

"1.   Base point 1. Base point 1 is the elevation of the highest adjoining sidewalk or ground surface within a 5 foot horizontal distance of the exterior wall of the building when such sidewalk or ground surface is not more than 10 feet above lowest grade. See Figure 930-6.

"2.   Base point 2. Base point 2 is the elevation that is 10 feet higher than the lowest grade when the sidewalk or

---

[1] ORS 197.825(3) provides for circuit court "enforcement actions" concerning local decisions that come within ORS 197.015(10)(b).

ground surface described in Paragraph 1. above, is more than 10 feet above lowest grade. See Figure 930-7."

The term "grade" is defined in PCC 33.910.030 to mean:

"The lowest point of elevation of the finished surface of the ground, paving, or sidewalk within the area between the building and the property line or, when the property line is more than 5 feet from the building, between the building and a line 5 feet from the building. This is the definition used in the Oregon Structural Specialty Code (the Uniform Building Code as amended by the State)."

We quote the salient portions of LUBA's analysis:

"PCC 33.930.050 measures the 30-foot height limit from a 'base point.' For relatively level lots the base point is the *highest* grade on the site. For steeper lots, such as the one at issue in this appeal, the base point is located 10 feet above the lowest site grade. In this case, the building permits approve a building height based on the grade that was established as a result of filling in a portion of the lower part of the property. Petitioners contend that the code requires that the base point should be calculated from the *original* grade. * * *

"* * * * *

"Land use standards that limit building height necessarily require that a beginning point to measure the height of a proposed building be identified. We do not understand petitioners to argue that the subsequent act of measuring the 30-foot building height limit is discretionary, once the starting point or 'base point' is identified. The technique employed by the city to identify the 'base point' in different circumstances, while somewhat complicated, is about as 'clear and objective' as a land use standard could be. The only possible lack of clarity identified by petitioners is whether the lowest and highest grade measurements in PCC 33.930.050 are to be based on *existing* site grade or *finished* site grades. That ambiguity is resolved by the definition of 'grade' at PCC 33.910.030, which clearly specifies that the grade is located based on 'finished surface.' " (Emphasis in original; footnotes omitted.)

The parties do not agree about the meaning of the term "finished surface," which LUBA held to be definitive. Petitioners contend that the term refers to the surface only as

embellished with a "coating" or "finishing," like pavement or cement, and not to an earth fill on top of "the underlying raw dirt." Petitioners explain that, "[w]ith no limit on fill, there can be no limit on building height so long as the city interprets 'lowest grade' to mean lowest finished grade instead of lowest original grade." The City's apparent position, on the other hand, is that LUBA's understanding of the term "finished surface" was right and that the term refers to the final elevation of the surface before measurement, however and by whatever augmenting devices the elevation is achieved.

We emphasize that our inquiry here is not to determine what the relevant terms in fact mean but only to determine whether they can plausibly be interpreted in more than one way. If so, they are ambiguous, and it would follow that the relevant city provisions are not "clear and objective," ORS 197.015(10)(b)(B), and that they cannot be applied without interpretation, ORS 197.015(10)(b)(A); *see St. John v. Yachats Planning Commission*, 138 Or App 43, 47, 906 P2d 304 (1995). Consequently, if the terms are ambiguous, the city's application of the provisions would constitute "land use decisions" that fall within LUBA's jurisdiction, and a remand for LUBA to decide the merits of the appeal would be necessary.

■ We agree with LUBA that, in the absence of further definition, PCC 33.930.050 in itself is ambiguous and that the term "finished surface" in the definition of "grade" is the only possible source of clarification in the City provisions that has been brought to our attention. However, we conclude that that term is also ambiguous. The word "finished" can connote any "completed condition" or "end product," on the one hand, or a qualitative improvement or enhancement of a raw starting condition—like paving—on the other. *See Webster's Third New Int'l Dictionary*, 853 (unabridged ed 1993). The first of those plausible meanings is consistent with the City's understanding, and the second with petitioners'. No context of which we are aware resolves the ambiguity, and no dispositive legislative history has been provided. *See Byrnes v. City of Hillsboro*, 104 Or App 95, 798 P2d 1119 (1990). Finally, canons of interpretation are available that can lead to either answer. Under the maxim *ejusdem generis*, the word "ground" in the term "finished surface of the

ground, paving, or sidewalk" would relate to something like in kind to pavement or sidewalks. Hence, that maxim would benefit petitioners. Conversely, the City's position would find assistance in the maxim that every word in an enactment is presumed to be meaningful; arguably, there would be no need for the word "ground" in the provision if the word simply referred to a species of paved surface of the same kind that the two words that follow it comprehensively describe.

■        In the abstract, we agree with LUBA that the complexity of a body of standards, in and of itself, does not defeat the possibility that they *can* be clear and objective. *See St. John*, 138 Or App at 47. Nevertheless, it is almost axiomatic that the more extensive and more complicated the standards are, the greater the opportunity for ambiguity becomes. The City's standards here are ambiguous, *i.e.*, unclear, and in need of interpretation in *at least* the particular that we have discussed. We conclude that the exceptions to LUBA's jurisdiction embodied in ORS 197.015(10)(b)(A) and (B) are inapplicable to these appeals.[2]

Reversed and remanded.

---

[2] LUBA's opinion suggests, as does the City, that the director's letter may not qualify as a "land use decision," for reasons independent of the two permits and of ORS 197.015(10)(b). That suggestion may well be correct. Because, however, LUBA has jurisdiction over those permits, we do not need to decide whether it also has jurisdiction over the director's letter, the appeal from which essentially raises the same issues as the appeals from the permits.