Argued and submitted August 15, 2001, affirmed August 7, petition for review denied November 19, 2002 (335 Or 90)

Sandra HARDTLA,
*Appellant,*

*v.*

CITY OF CANNON BEACH,
an Oregon municipal corporation;
Earl H. Twietmeyer; Elaine G. Twietmeyer;
Mark D. Twietmeyer; Beth A. Clayton;
Sharon M. Muck; Lisa K. Fox;
and Twietmeyer Properties, a partnership,
*Respondents.*

992219; A110719

52 P3d 437

Jeffrey M. Kilmer argued the cause for appellant. With him on the briefs were Gregory B. Snook, Christopher T. Carson and Kilmer, Voorhees & Laurick, P.C.

Ruth Casby Rocker argued the cause for respondent City of Cannon Beach. With her on the brief were Janet M. Schroer and Hoffman, Hart & Wagner, LLP.

William H. Walters argued the cause for respondents Earl H. Twietmeyer, Elaine G. Twietmeyer, Mark D. Twietmeyer, Beth A. Clayton, Sharon M. Muck, Lisa K. Fox and Twietmeyer Properties. With him on the brief were Dennis P. Rawlinson and Miller Nash LLP.

Before Armstrong, Presiding Judge, and Kistler, Judge, and Warren, Senior Judge.

KISTLER, J.

**KISTLER, J.**

The City of Cannon Beach approved defendants' application to build a garage with a guest room on their property.[1] Plaintiff filed a complaint in the trial court challenging the city's decision to approve the application. The court dismissed the complaint because the Land Use Board of Appeals (LUBA) has exclusive jurisdiction to review the city's decision.[2] Plaintiff appeals, and we affirm.

Plaintiff and defendants are neighbors. Defendants have a single family dwelling on their property. They applied to the city for a building permit to construct a "garage w/ guest house" on their property. The application stated that the proposed building would involve new residential construction and would contain, in addition to the garage, one bedroom and one bathroom. The area for the garage was listed as 912 square feet, as was the area for the guest house. A space on the application form for "kitchen" was left unchecked.

The description of the project as a "garage w/ guest house" appeared in the "remarks" portion of the application form. After reviewing defendants' proposal, the city building official, Tim Lindsey, crossed out the word "house" in the description and substituted the word "room." The city approved the application, as amended, on July 9, 1996.

Following the city's approval, defendants built a two-story structure consisting of a garage below and a living space above the garage. The living space includes a bedroom, bathroom, and what plaintiff describes as a kitchen area because it includes a sink, cupboards, microwave, and a

---

[1] We use the term defendants to refer to the persons who own the land on which the structure was built. Although the City of Cannon Beach is also a defendant, we refer to it separately as the city.

[2] ORS 197.015(10)(a)(A) defines "land use decision" to include a "final decision or determination made by a local government or special district that concerns the adoption, amendment or application of," among other things, a land use regulation. A land use regulation is an ordinance establishing standards for implementing a comprehensive plan. ORS 197.015(11). The trial court ruled that the city's decision to issue a building permit represented the application of a land use regulation, the city's zoning ordinance. *See* ORS 197.015(10)(a)(iii). With certain exceptions, LUBA has exclusive jurisdiction to review land use decisions. *See* ORS 197.825.

refrigerator. The structure has electrical, plumbing, telephone, and cable services. It has been used by family and nonpaying guests and is occupied, on average, two weekends a month.

On October 21, 1996, plaintiff sought a hearing before the Cannon Beach City Council concerning the city's approval of the building permit. The city manager wrote plaintiff that the council would not grant her request for a hearing. He added, however, that plaintiff's request had been considered at the city council meeting on November 12, 1996. He said that the council

"determined that there was no action to be taken by that body. A garage or accessory dwelling is a permitted use within an R-2 zone. The application meets the criteria of the City's zoning ordinance, and there is no basis for requiring a hearing in this matter."

After more correspondence, the city modified its position and told plaintiff that the use was approved as an "accessory structure," not as an accessory dwelling or guest house.

Plaintiff did not seek review of the city's ruling before LUBA. Rather, on August 18, 1999, she filed a complaint in Clatsop County Circuit Court, alleging that the city's decision to issue the building permit was inconsistent with its land use regulations.[3] She sought, among other things, a declaration that the building permit had been issued in error and an injunction requiring removal of the structure. Defendants moved for summary judgment asserting, among other defenses, that the circuit court lacked jurisdiction over the controversy because the decision to issue the building permit was a "land use decision" subject to LUBA's exclusive review authority. The trial court agreed that LUBA had exclusive jurisdiction, see ORS 197.825(3)(a), and dismissed plaintiff's complaint.

On appeal, plaintiff raises two assignments of error. She argues initially that the trial court erred in holding that it lacked jurisdiction to determine whether the building permit complied with the city's zoning ordinances. She notes

---

[3] Plaintiff filed an earlier complaint in 1998, which she voluntarily dismissed.

that, although LUBA has exclusive jurisdiction to review land use decisions, the circuit courts retain jurisdiction to review local government decisions that "approv[e] or den[y] a building permit issued under clear and objective land use standards." ORS 197.015(10)(b).[4] Plaintiff argues that the applicable provisions of the city's zoning ordinance are clear and unambiguous, while defendants contend that the question of which provision applies is itself ambiguous and thus subject to LUBA's jurisdiction. *See Tirumali v. City of Portland*, 169 Or App 241, 7 P3d 761 (2000), *rev den* 331 Or 674 (2001).

More specifically, plaintiff argues that defendants' building should be classified as either a "guest house" or an "accessory dwelling." Cannon Beach Zoning Ordinance (CBZO) 17.04.285 defines a "guest house" as "a structure of no more than four hundred fifty square feet of site area used in conjunction with the main building for temporary housing of non-paying visitors and guests and containing no cooking facilities." An "accessory dwelling" is defined as "an attached or detached dwelling unit which is located on the same lot on which a single-family dwelling * * * is located * * * and which is rented only for periods of thirty calendar days or more." CBZO 17.04.008. Accessory dwellings may not exceed 600 square feet. CBZO 17.54.080(B). Plaintiff asserts that, whichever of these two provisions applies, each clearly and objectively prohibited the city from approving defendants' proposed structure, which was 912 square feet. It follows, plaintiff reasons, that the trial court had jurisdiction to review the city's decision.

Defendants note that the city concluded that their structure should be considered as an "accessory use" rather than as either a "guest house" or an "accessory dwelling." *See* CBZO 17.04.010 (defining accessory structure or use).[5] They

---

[4] The trial court's jurisdiction is governed by ORS 197.825(3)(a), which provides that the circuit courts of Oregon retain jurisdiction "[t]o grant declaratory, injunctive or mandatory relief in proceedings arising from decisions described in ORS 197.015(10)(b)[.]" ORS 197.015(10)(b), in turn, provides that certain local government decisions are subject to circuit court jurisdiction, including "a decision of a local government * * * which approves or denies a building permit issued under clear and objective land use standards[.]" ORS 197.015(10)(b)(B).

[5] CBZO 17.04.010 provides:

also note that both a guest house and an accessory dwelling are subcategories of the general category of "accessory uses." They contend that not only does their structure, a "garage w/ guest room," not qualify as either a "guest house" or an "accessory dwelling," but also that nothing in the zoning code prevented the city from concluding that the general category of "accessory structures or uses" is broad enough to include uses, such as theirs, that are not included within either of those two subcategories. Defendants conclude that the city's choice among those competing categories was sufficiently uncertain that the governing standards cannot be described as clear and objective.[6] *See St. John v. Yachats Planning Commission*, 138 Or App 43, 47, 906 P2d 304 (1995). It follows, they reason, that LUBA had exclusive jurisdiction to review the city's decision. *See id.*

■ In analyzing the parties' arguments, we start from the proposition that the hybrid structure that defendants proposed—a garage with a guest room—does not fit within either of the two subcategories of accessory uses—guest houses and accessory dwellings—that, in plaintiff's view, apply. At a minimum, neither category includes structures such as garages, with or without guest rooms. The issue accordingly reduces to the question whether the general category for accessory uses on which defendants rely is broad enough to include defendants' hybrid structure. More specifically, the question is whether the city's zoning ordinance is ambiguous on that point. If it is, then any challenge to the city's decision to approve defendants' application under that classification should have been filed with LUBA rather than with the trial court. *St. John*, 138 Or App at 47.

A garage with a guest room located on defendants' lot next to their main residence is, or at least arguably could be considered, "a structure or use incidental and subordinate to the main use of property and located on the same lot as the

---

" 'Accessory structure' or 'accessory use' means a structure or use incidental and subordinate to the main use of property and located on the same lot as the main use."

[6] Defendants correctly note that the only potentially applicable land use standard, the general definition of "accessory use," is itself not clear and objective. Rather, the definition of accessory uses sets out a general standard that is subject to differing interpretations.

main use." *See* CBZO 17.04.010 (defining accessory use); *Tirumali*, 169 Or App at 247. At a minimum, the question whether one use is incidental and subordinate to another requires interpretation. Plaintiff, however, argues that another provision in the city's zoning ordinance unequivocally demonstrates that, in considering whether to approve defendants' application for a building permit, the city was precluded from relying on the classification for accessory uses and was limited to deciding whether defendants' structure was either a "guest house" or an "accessory dwelling." Specifically, plaintiff relies on a general interpretative rule, which provides:

> "Where the conditions imposed by any provisions of this title are less restrictive than comparable conditions imposed by any other provisions of this title, resolution or comprehensive plan, the provisions which are more restrictive shall govern."

CBZO 17.02.030.

Although plaintiff argues that this interpretative rule unambiguously required that defendants' proposed structure be classified as either a guest house or an accessory dwelling, the rule raises as many questions as it answers. In this case, for example, is the condition that accessory uses be "incidental and subordinate to the main use of property" more or less restrictive than the condition that accessory dwellings be rented only for 30 days and be no larger than 600 square feet? Because the restrictions each condition imposes differ, deciding which condition is more or less restrictive is not as obvious as plaintiff's argument assumes. Beyond that, the interpretative rule assumes that two zoning provisions apply to an application and provides a rule for deciding which of those two provisions governs—the one with the more restrictive conditions. In this case, however, neither the provision for guest houses nor the one for accessory dwellings applies to a garage with a guest room attached. It is thus far from clear that the interpretative rule on which plaintiff relies applies to defendants' application for a building permit, or at least that is one plausible interpretation of the rule. Having considered the parties' arguments and the various

provisions of the city's code, we cannot say that they unambiguously required the city to reach the conclusion that plaintiff urges. If plaintiff believed that the city erred in approving defendants' application, her only remedy was to challenge the city's decision before LUBA.

■  Plaintiff's second assignment of error is directed at the trial court's ruling dismissing the second count of her first claim for relief. In that count, she alleged:

> "In the alternative, if Defendant Property Owners' structure actually contains a kitchen or cooking facility or violates yard or set back requirements, such structure was approved, constructed and maintained in violation of the Code because the structure approved by Defendant City and built by Defendant Twietmeyer exceeds the maximum allowed area of 600 square feet under Section 17.54.080 (standards for 'accessory dwelling') and/or was not subjected to design review as required under Chapter 17.44 of the Code."

Plaintiff argued below that, even if the trial court lacked jurisdiction to review the city's decision to approve defendants' building permit, it retained jurisdiction to grant injunctive relief in "proceedings brought to enforce the provisions of an adopted comprehensive plan or land use regulations[.]" *See* ORS 197.825(3)(a). The trial court granted summary judgment on this count without discussion.

We affirm the trial court's ruling for two related but separate reasons. For all that appeared from plaintiff's pleadings and her arguments below, the second count of her first claim for relief was simply a collateral attack on the city's decision to approve defendants' building. That count alleges, for example, that defendants' structure "was approved, constructed and maintained" in violation of the city's zoning ordinance because it exceeded the 600 square foot limit imposed on accessory dwellings. To the extent that plaintiff intended to make a separate claim to enforce the permit the city issued, as opposed to challenging its decision to approve the permit, she never made that separate claim clear to the trial court. Rather, the claim in plaintiff's second count is bound up in, and part of, her claim that the city should never have approved defendants' application in the first place.

Moreover, plaintiff's allegations assume that the city could have approved defendants' application, if at all, only under the classification for accessory dwellings. As explained above, however, the question whether defendants' application should have been characterized as an accessory dwelling, a guest house, or an accessory use was an issue initially for the city and then for LUBA. In order to resolve the second count of plaintiff's first claim for relief, the trial court would have had to decide the issue that the statutes entrust to LUBA. *See Mar-Dene Corp. v. City of Woodburn,* 149 Or App 509, 515, 944 P2d 976 (1997). Because plaintiff's second count is inextricably intertwined with the issues properly before LUBA, the trial court correctly declined to reach it.

Affirmed.