No. 125 February 20, 2025 123

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

1000 FRIENDS OF OREGON,
Neighbors for Clean Air, and
Northwest Environmental Defense Center,
*Petitioners,*

*v.*

CITY OF PORTLAND,
Faster Permits, and ProLogis,
*Respondents.*

Land Use Board of Appeals
2023088;
A185656

Argued and submitted on December 6, 2024; on respondents Faster Permits and Prologis' motion to take judicial notice filed November 26, 2024.

Eric Wriston argued the cause for petitioners. Also on the brief were Meriel Darzen, Crag Law Center, and Mary Stites.

Lauren A. King argued the cause for respondent City of Portland. Also on the brief was Linly Rees.

Steven Hultberg argued the cause for respondents Faster Permits and Prologis. Also on the briefs were Christen C. White and Radler White Parks & Alexander LLP.

Before Ortega, Presiding Judge, Hellman, Judge, and Mooney, Senior Judge.

HELLMAN, J.

Motion to take judicial notice denied as moot; affirmed.

**HELLMAN, J.**

Petitioners seek judicial review of an order of the Land Use Board of Appeals (LUBA) in which LUBA transferred the case to the circuit court because it concluded it did not have jurisdiction to review the merits of petitioner's petition. At LUBA, petitioners sought to challenge the City of Portland's approval of intervenors' application for a building permit for a warehouse. LUBA concluded that it did not have jurisdiction because the building permit approval fell under ORS 197.015(10)(b)(B), which provides that a land use decision "[d]oes not include a decision of a local government *** [t]hat approves or denies a building permit issued under clear and objective land use standards[.]" We review LUBA's order to determine whether it is "unlawful in substance or procedure," ORS 197.850(9)(a), and affirm.[1]

*Facts*

The relevant facts are few. Intervenors applied for a permit to build a warehouse and accessory office on property zoned General Employment 2 (EG2). The Bureau of Development Services (BDS) "Zoning Code Standards Review Summary" indicated that the primary use under Portland City Code (PCC) 33.140.100[2] was "Warehouse & Freight Movement" and the accessory use under PCC 33.140.110 was "Office." Next to the check box for those uses was noted, among other things, "Nuisance Related Impacts [Non Res. Use Only (33.140.130)]." (Brackets in original.) In addition, in the "Plan Review - All Comments Report" planning and zoning included a "Library Comment" stating:

"[PCC] 33.262, Off-Site Impacts: The on-going operation of the facility is required to comply with the Off-Site Impacts regulations found in 33.262. Nonresidential uses in all zones which cause off-site impacts on uses in the R, C,

---

[1] We deny as moot intervenors' motion for us to take judicial notice of Portland Ordinance 157663, enacted July 31, 1985.

[2] Portland City Code, Title 33 has been amended several times since intervenors applied for the building permit. Under PCC 33.700.080.A.2 (Jan. 1, 2025), the city applies the version of Title 33 in effect on the date a complete building permit application is filed with the city. As a result, and because no party has argued that a different version applies, all references in this opinion to PCC, Title 33 are to the version in effect as of March 17, 2022, when intervenors first filed the building permit application.

> CI, IR and OS zones are required to meet the standards of Chapter 33.262. The facility will be required to comply with Noise (33.262.050), Vibration (33.262.060), Odor (33.262.070) and Glare (33.262.080)."

Planning and zoning also specifically provided a comment about compliance with the glare standard from PCC 33.262.080.A, requesting that intervenors demonstrate that the lighting will not exceed the standard and, later, commenting that currently the glare standard would be exceeded at two points at the property line. In response, intervenors modified external lighting plans to ensure compliance with the standard. In November 2023, BDS approved the building permit, and petitioners sought review of that decision at LUBA.

Under ORS 197.825(1), LUBA has exclusive jurisdiction to review any "land use decision" of a local government. "Land use decision" is a statutorily defined term, and ORS 197.015(10)(b)(B) provides that the term land use decision "[d]oes not include a decision of a local government *** [t]hat approves or denies a building permit issued under clear and objective land use standards[.]" Here, LUBA determined that it did not have jurisdiction based on that provision and transferred the case to the circuit court. Petitioners seek judicial review of LUBA's decision.

### Standard of Review

In this judicial review, we must determine whether the city approved the intervenors' building permit "under clear and objective land use standards." ORS 197.015(10)(b)(B). In doing so, "our inquiry here is not to determine what the relevant terms in fact mean but only to determine whether they can plausibly be interpreted in more than one way. If so, they are ambiguous, and it would follow that the relevant city provisions are not 'clear and objective[.]'" *Tirumali v. City of Portland*, 169 Or App 241, 246, 7 P3d 761 (2000), *rev den*, 331 Or 674 (2001).

### Applicable Code Provisions: PCC 33.140 and PCC 33.262

We start our analysis with an overview of the city code provisions at issue. The proposed building site is in the

EG2 zone,[3] which is covered by PCC 33.140. Of relevance to this case is PCC 33.140.130.A, which provides, "Off-site impacts. All nonresidential uses including their accessory uses must comply with the standards of Chapter 33.262, Off-Site Impacts."

The purpose of PCC 33.262 is to

"protect all uses in the R, C, CI, IR, and OS zones from certain objectionable off-site impacts associated with non-residential uses. These impacts include noise, vibration, odors, and glare. The standards ensure that uses provide adequate control measures or locate in areas where the community is protected from health hazards and nuisances. The use of objective standards provides a measurable means of determining specified off-site impacts. This method protects specific industries or firms from exclusion in a zone based solely on the general characteristics of similar industries in the past."

PCC 33.262.010. Under PCC 33.262.020, "[n]onresidential uses in all zones which cause off-site impacts on uses in the R, C, CI, IR, and OS zones are required to meet the standards of this chapter." The section sets out standards for noise, PCC 33.262.050, vibration, PCC 33.262.060, odor, PCC 33.262.070, and glare, PCC 33.262.080. Under PCC 33.262.090, Measurements, the code describes how measurements for compliance are taken, so that the city can determine if there is a violation. That section provides:

"A.   Measurements for compliance with these standards are made from the property line or within the property of the affected site. Measurements may be made at ground level or at habitable levels of buildings.

"B.   If the City does not have the equipment or expertise to measure and evaluate a specific complaint, it may request assistance from another agency or may contract with an independent expert to perform such measurements. The City may accept measurements made by an

[3] The EG2 zone is described as areas that "have larger lots and an irregular or large block pattern. The area is less developed, with sites having medium and low building coverages and buildings which are usually set back from the street. EG2 zoned lands will generally be on larger areas than those zoned EG1." PCC 33.140.030.A.2. The proposed use—warehouse and freight movement—is a primary use allowed in the EG2 zone. PCC 33.140.100, Table 140-1; *see also* PCC 33.920.340 (describing use category of warehouse and freight movement).

independent expert hired by the controller or operator of the off-site impact source. If the City contracts to have measurements made and no violation is found, the City will bear the expense, if any, of the measurements. If a violation is found, City expenses will be charged to the violator. Nonpayment of the costs is a violation of the Code, and enforced through the provisions of Title 22."

The next section, PCC 33.262.100, Documentation in Advance, provides:

"In situations where the Director of BDS is empowered to require documentation in advance that a proposed use will conform with these standards, all of the following additional information is required of the applicant prior to approving a building permit:

"A.   Use description. A description of the use or activity regarding processes, materials used, storage, waste disposal, types of machinery and other such items as it relates to off-site impacts. However, the applicant is not required to reveal any trade secrets which would cause any secret manufacturing procedure, compound or product to become public knowledge and available to competitors;

"B.   Abatement devices. An explanation of any mechanisms or techniques which are proposed to restrict any hazardous or nuisance effects, including the type and location of any abatement devices and/or recording instruments to measure conformance with the required standard; and

"C.   Expert evaluation. An evaluation and explanation certified by a registered engineer or architect, as appropriate, that the proposed activity can achieve the off-site impact standard or standards in question."

*Analysis*

Petitioners make two alternative arguments in support of LUBA's jurisdiction. In the first, they argue that under PCC 33.140.130, the city was required to apply the four off-site impact standards in PCC 33.262—noise PCC 33.262.050, vibration, PCC 33.262.060, odor, PCC 33.262.070, and glare, PCC 33.262.080. Petitioners assert that the city did, in fact, apply those four standards, based on the city requiring intervenors to modify the lighting design to comply with the glare standard. Petitioners argue

that the odor standard in PCC 33.262.060 is not clear and objective and, thus, LUBA had jurisdiction. In the alternative, petitioners assert that PCC 33.262.100 is not clear and objective as to when it applies the off-site standards in advance of construction and, as a result, LUBA had jurisdiction. We address each in turn below.

We reject as implausible petitioners' proposed interpretation of PCC 33.140.130 and PCC 33.262, to require the city to apply the noise, vibration, odors, and glare standards at the time of building permit approval. When read together, the entirety of PCC 33.262 unambiguously provides that the noise, vibration, odors, and glare standards apply when a non-residential *"use" "cause[s] off-site impacts* on uses in the R, C, CI, IR, and OS zones [.]" PCC 33.262.020 (emphases added). The reference to a "use" that "causes" "impacts" makes it clear that the code sets out standards that apply after construction, not ones that must be met at the building permit stage.[4]

We also reject petitioners' argument that PCC 33.262.100 demonstrates that the code provisions are about whether the city can require expensive documentation in advance and not whether the standards themselves apply at the building permit stage.  By its terms, PCC 33.262.100 addresses "situations where the Director of BDS is empowered to require documentation in advance" and requires "additional information * * * prior to approving a building permit." Those phrases indicate that PCC 33.262.100 applies only in limited situations, and does not alter the general rule stated above, which applies the standards at the time of use, not permit approval. In sum, petitioners' offered interpretation of PCC 33.262 is not plausible.

We also reject petitioners' argument that city, in fact, did issue the building permit under each of the off-site standards in PCC 33.262. As LUBA concluded, the factual record only supports that, at most, the city applied the glare standard in advance. When it comes to issues of fact, we are confined to the record and "may not substitute [our] judgment for that of [LUBA] as to any issue of fact." ORS 197.850(8). Further, petitioners do not point to anything in

---

[4] The only exception to this is when PCC 33.262.100, Documentation in Advance, applies.

the city's code that would require us to conclude, as a matter of law, that the city necessarily issued the building permit under all four off-site standards based on its comments on the glare standard. We thus reject petitioners' assertion that the city, in fact, applied the odor standard to the building permit, which is the only standard that petitioners assert is not "clear and objective."

Petitioners' alternative argument is that PCC 33.262.100 is ambiguous as to when it requires documentation in advance because what it means for the BDS director to be "empowered" to require that documentation for a proposed use is not clear and objective and, thus, LUBA had jurisdiction on that basis. We reject that argument because petitioners do not offer a plausible interpretation that demonstrates that PCC 33.262.100 could apply to the building permit at issue here apart from the interpretation above that we have already rejected. The city, for its part, explains with citation to code provisions that PCC 33.262.100 is implicated when other code provisions state that the director is empowered to require the advance documentation—a clear and objective inquiry. *See, e.g.*, PCC 33.219.060F (requiring convenience stores to meet requirements of PCC 33.262.100 for the glare standard); PCC 33.224.060 (requiring drive-through facilities that abut an R zone to document in advance that the facility will meet the noise standard); PCC 33.258.050.B (requiring nonconforming uses seeking to change the use to document in advance that the use will meet the off-site impact standards); PCC 33.410.080 (providing that the BDS director may require development in a buffer overlay zone to document in advance as provided in PCC 33.262.100). There is no requirement for documentation in advance for the building permit of a warehouse in an EG2 zone. This is not a situation where we are faced with multiple plausible interpretations. Only the city has offered an interpretation that is plausible as it applies in this case.

*Conclusion*

In sum, we conclude that LUBA lacked jurisdiction over petitioners' petition because the city approved the building permit "under clear and objective land use standards." ORS 197.015(10)(b)(B).

Motion to take judicial notice denied as moot; affirmed.