Argued and submitted January 6, 2015; in A155158, dismissal of plaintiff's
second claim for declaratory relief reversed and remanded, otherwise affirmed;
in A155511, affirmed March 1, 2017

Kenneth A. THOMAS,
*Plaintiff-Appellant,*

*v.*

WASCO COUNTY;
Wolf Run Ranch, LLC; and
Moonshine Events, LLC,
*Defendants-Respondents,*

*and*

Peter CLARK,
*Defendant.*
Wasco County Circuit Court
1300193CC; A155158 (Control)

Kenneth A. THOMAS,
*Petitioner-Appellant,*

*v.*

WASCO COUNTY,
*Respondent-Respondent*

*and*

MOONSHINE EVENTS, LLC,
an Oregon corporation,
dba What The Festival; and
Wolf Run Ranch, LLC,
*Intervenor-Respondents-Respondents.*

Wasco County Circuit Court
1300161CC; A155511

392 P3d 741

Peter Livingston argued the cause for appellant. With him on the briefs was Black Helterline LLP.

Jill D. Bowman argued the cause for respondents Wolf Run Ranch, LLC, and Moonshine Events, LLC. On the brief were Jeremy D. Sacks, Elaine R. Albrich, and Stoel Rives LLP.

No appearance for respondent Wasco County.

Steven D. McCoy filed the brief *amicus curiae* for 1000 Friends of Oregon.

Before Tookey, Presiding Judge, and Hadlock, Chief Judge, and Haselton, Senior Judge.

**HADLOCK, C. J.**

Petitioner Kenneth Thomas appeals from judgments of the circuit court dismissing his petition for a writ of review and his second amended complaint seeking a declaratory judgment.[1] The proceedings arise out of petitioner's objections to an order of the Wasco County Board of Commissioners granting a permit for an "outdoor mass gathering" to petitioner's neighbor. ORS 433.750 (2013) (authorizing a county governing body to "issue a permit upon application" for an outdoor mass gathering).[2] The issues on appeal relate to the interplay of Oregon's land use laws and those governing outdoor mass gatherings. For the reasons explained in this opinion, we conclude that the circuit court did correctly enter judgment for respondents on the writ of review petition but that it erred in dismissing the second claim of petitioner's second amended complaint in the declaratory judgment action. We therefore reverse and remand the judgment dismissing the declaratory judgment action and otherwise affirm.

## I. BACKGROUND

### A. *Issuance of the Outdoor-Mass-Gathering Permit*

The relevant facts and chronology are undisputed. Respondent Wolf Run Ranch, LLC (Wolf Run) owns 254 acres in Wasco County. The subject property is partially forested and is zoned for forest use; within the parcel is a field of approximately 92 acres. The property also includes a single-family dwelling, several small barns, garages and other outbuildings, and a driveway to the dwelling. Petitioner owns timbered land adjacent to the subject property.

In March 2013, respondent Moonshine Events, LLC, doing business as "What the Festival" (Moonshine), filed an application with the county seeking a permit for an outdoor

---

[1] The appeals of the two judgments have been consolidated. For convenience, throughout this opinion, we refer to Thomas as "petitioner," although he is also the plaintiff in the declaratory judgment action.

[2] ORS 433.750 was amended in 2015, effective June 16, 2015. Or Laws 2015, ch 428, § 1. The amendments are not applicable to this proceeding. Except as noted, all references in this opinion to provisions in ORS chapter 433 are to the 2013 version, which was in effect when the permit was granted.

mass gathering on Wolf Run, with an anticipated festival attendance of 4,000 to 5,000 attendees and 600 to 800 staff. The event was to be held from July 25 to 28, 2013. The permit application included a site plan showing proposed development to the property to accommodate the festival, including additional and expanded roads, several parking areas, an area to be leveled by "cut and fill" for use as a splash pool, and other water storage areas. A proposed new roadway would provide primary access to the festival.

ORS 433.735(1) defines an "outdoor mass gathering" as

"an actual or reasonably anticipated assembly of more than 3,000 persons which continues or can reasonably be expected to continue for more than 24 consecutive hours but less than 120 hours within any three-month period and which is held primarily in open spaces and not in any permanent structure."

Under ORS 433.745(1), a person who seeks to "hold, conduct, advertise or otherwise promote" an outdoor mass gathering may do so by permit.[3] ORS 433.745(2) states that a permit for an outdoor mass gathering "does not entitle the organizer to make any permanent physical alterations to or on the real property."[4]

---

[3] As relevant here, ORS 433.745(1) provided:

"No organizer shall hold, conduct, advertise or otherwise promote an outdoor mass gathering or allow an outdoor mass gathering to be held on real property the organizer owns, leases or possesses unless a permit to hold such outdoor mass gathering has been issued by the county governing body in which the outdoor mass gathering is to take place."

ORS 433.745(1) was amended in 2015. Oregon Laws 2015, chapter 428, section 11. The 2015 amendments are not applicable here.

[4] As relevant here, ORS 433.745(2) provided:

"A permit issued under this section does not entitle the organizer to make any permanent physical alterations to or on the real property which is the site of the outdoor mass gathering."

As amended by Oregon Laws 2015, chapter 428, section 1, ORS 433.745(2) now provides:

"A permit issued under this section does not entitle the organizer to make any permanent development to or on the real property. *Any permanent development on the real property must be made in accordance with any applicable state or local land use law.*"

(Emphasis added.) The 2015 amendments are not applicable here.

The procedures for seeking a permit for an outdoor mass gathering are set forth in ORS 433.750(1), which provides that the governing body of a county shall issue a permit

"when the organizer demonstrates compliance with or the ability to comply with the health and safety rules governing outdoor mass gatherings to be regulated according to the anticipated crowd and adopted by the Oregon Health Authority."

A county must hold a hearing on an application for an outdoor mass gathering, publish notice of the hearing, and give notice to local law enforcement, fire, and health officials. ORS 433.750(2) - (4). A county's authorization of an outdoor mass gathering is not a land use decision. ORS 197.015(10)(d).[5]

The county held a public hearing on May 8, 2013. Witnesses described the development that would be necessary to hold the festival and to satisfy state health and safety standards, including the cutting of trees to accommodate the construction of a parking area, a ticket booth, and new access road; multiple vehicle-arrival lanes; a stream crossing for vehicles; and a culvert.[6]

Petitioner appeared at the hearing and contended that the proposed improvements would effect permanent alterations to the property that were not allowed without permits and that had not been approved under applicable land use statutes and ordinances. A county planner testified that the county did not intend to permit any sort of permanent infrastructure in conjunction with the outdoor-mass-gathering permit, and that the required road (which the parties do not dispute is a permanent improvement) was a "driveway" already allowed in conjunction with

---

[5] We note for context that becomes significant to our analysis below, *see* 284 Or App at 30-31, that ORS chapter 433 also sets out distinct procedures for permits for gatherings anticipated to last longer than 120 hours. In particular, under ORS 433.763(1)(c)(A), an application for a gathering anticipated to last longer than 120 hours must be presented to the county planning commission and is explicitly subject to land use requirements.

[6] OAR 333-039-0005 to 333-039-0055 "govern health and safety at outdoor mass gatherings[.]" Among those provisions is one requiring "easily accessible roads of all-weather construction at the outdoor mass gathering site." OAR 333-039-0055.

the existing residential use.[7] At the conclusion of the hearing on May 8, 2013, the Wasco County Board of Commissioners unanimously approved respondents' application for a permit for an outdoor mass gathering on the subject property, and it issued an order approving that gathering, with 11 conditions. Moonshine undertook to improve the property as required by the county's order.

B. *Petitioner's Challenges to the Permit and the Trial Court's Rulings*

1. *Petitioner's LUBA challenge*

Petitioner challenged the county's order granting the outdoor-mass-gathering permit through various channels. One of those routes involved an appeal of the county's order to the Land Use Board of Appeals (LUBA). Petitioner acknowledged that the county's granting of the permit was not itself a land use decision subject to LUBA's jurisdiction. *See* ORS 197.015(10)(d) (excluding from the definition of a "land use decision" the "authorization of an outdoor mass gathering as defined in ORS 433.735"). Nonetheless, petitioner argued, the county's approval encompassed a separate land use decision to approve permanent alterations to the property, specifically an access road and a parking lot, that are expressly prohibited by ORS 433.745(2). LUBA dismissed petitioner's appeal, explaining that "the county made only a single decision * * * which approves the [outdoor mass gathering], including the access road and the parking areas." LUBA reasoned, further, that petitioner's arguments that the county had erroneously approved permanent physical

---

[7] The planner testified:

"[W]e are not intending to permit any sort of permanent infrastructure in conjunction with the request * * *. We don't think that's allowed in the statute. That's not what we're intending to do. The road that was described on this property is a driveway. There's an existing driveway. It's a residential use on the property. It would be—it's infrastructure that goes with the residential use, which is permitted on this property and it's permitted in this zone[.]"

Although the county planner characterized the new road as a "driveway" permitted in conjunction with the existing residence, it is clear that the county understood that the road was intended to serve the festival. The application for the road approach permit listed the purpose of the approach as "commercial," and the permit itself described as its purpose "constructing new approach to access [festival] parking lot."

alterations to the land in violation of ORS 433.745(2) should be presented to the circuit court, on petition for review of the order. Petitioner did not seek review of LUBA's order.

2. *Petitioner's code-compliance complaint*

Petitioner also sought relief from the county's order granting the outdoor-mass-gathering permit via Wasco County's Land Use and Development Ordinance (LUDO), Section 15.010, under which it is the duty of the county planning director or the director's designee to "to enforce the provisions" of the county's ordinances "pertaining to property use and to the construction, erection, location or enlargement of any structure located within Wasco County[.]"[8] Petitioner filed a complaint with the county's code compliance officer, alleging that the improvements required by the permit would result in permanent physical alterations to the subject property in violation of ORS 433.745(2) and in violation of state and local land use laws. On May 23, 2013, the county's compliance officer rejected petitioner's complaint and issued a "notification of non-violation" (NNV), stating that the county did not find any code violations in connection with the county's conditions for the permit. The NNV explained that the parking and vehicle staging areas were "temporary" and that the "driveway" and culvert were permitted in conjunction with the existing dwelling and residential use. The NNV stated additionally that the county's code compliance program was not the mechanism for challenging the approval of an outdoor mass gathering, and that any challenge to the permit must be taken up in the circuit court, pursuant to ORS 433.750(5). Petitioner did not appeal the May 23 NNV to LUBA or otherwise challenge it.[9]

---

[8] LUDO Section 15.030 provides:

"Whenever necessary to enforce the provisions of this Ordinance, the Director, or the Director's designee, shall have the authority in addition to other remedies provided by law, to issue compliance notices and orders, assess penalties, record violations and liens with the County Clerk, issue citations, to institute injunction, mandamus, abatement or other appropriate proceedings to prevent, temporarily, or permanently enjoin or abate a violation."

[9] We take judicial notice that, in August 2013, petitioner filed a second code-compliance complaint, asserting that the development of roads, parking areas, and water storage areas shown on the site plan on the subject property occurred without the necessary development approvals. The county's code compliance officer again concluded that there had been no land use violations on the

### 3. *The writ of review proceeding*

As the county's NNV signaled, ORS 433.750(5) provides that "[a]ny decision of a county governing body on an application for a permit to hold an outdoor mass gathering may be appealed to a circuit court for the county as provided in ORS 34.020 to 34.100." On May 14, 2013, petitioner filed a circuit-court petition for a writ of review of the county's order granting the outdoor-mass-gathering permit. Among other contentions, petitioner alleged that the permanent improvements to be made to the property to comply with the county's health and safety conditions are prohibited by state land use laws. Petitioner sought a stay of the permit to prevent further alterations of the property. The county responded that the improvements were temporary or were allowed under previous land use authorizations. The county, Wolf Run, and Moonshine also contended that petitioner should have challenged the outdoor-mass-gathering permit indirectly, by appealing the NNV to LUBA.

In early July 2013, the circuit court issued a letter opinion affirming the county's decision to issue the permit. The court rejected petitioner's contention that the county's outdoor-mass-gathering permit had authorized permanent alterations on the property, in violation of ORS 433.745(2). The court reasoned that, although ORS 433.745(2) states explicitly that an outdoor-mass-gathering permit does not authorize permanent improvements, any inquiry as to whether proposed permanent improvements complied with land use laws was beyond the county's jurisdiction in the context of the permitting process, and that the "county governing body * * * is not charged with considering the potential for a violation of this statute when reviewing the permit application." The court explained:

"Although I agree with the premise that the County lacks jurisdiction in the [outdoor mass gathering] Permit process to approve permanent improvements, I cannot find from the record that the County did any such thing.

"Petitioner does not argue that the County expressly approved unlawful permanent improvements on the property.

property. Petitioner appealed that decision to LUBA, which has held the case in abeyance pending the outcome of this appeal.

Rather, Petitioner argues that the County was aware, or should have been aware, that applicant would be making unlawful permanent improvements to the property in anticipation of holding the [outdoor mass gathering], and by approving the [outdoor mass gathering] permit the County tacitly approved the unlawful permanent improvements, thus exceeding its jurisdiction.

"This argument is buttressed somewhat by certain statements made in the Order approving the [outdoor mass gathering] permit. In its second Finding of Fact, the Board 'recognizes the procedural and legal requirements of * * * the Wasco County Land Use and Development Ordinance.' * * * In its Conclusions of Law, the Board notes that its decision is 'consistent with * * * the Wasco County Land Use and Development Ordinance.'

"In my view, however, these statements are surplusage, not license. During the May 1 [outdoor mass gathering] permit hearing, the County directed Petitioner to take any land use concerns to the County's Code Compliance Office. * * * The County's Order specifically states: 'This decision does not constitute tacit approval for any other development or use.'

"Given the criteria for the granting of [outdoor mass gathering] permits described above, the issue whether applicant intended to make unlawful improvements to the property could play no role in the decision, either for or against. It is simply not relevant to the *permit* process. [Footnote omitted.] During oral argument on July 2, Petitioner characterized the County's disregard of his concerns regarding permanent improvements as a 'de facto approval' of the improvements. I feel the County's disregard is more properly characterized as recognition that, in the context of the [outdoor mass gathering] permit process, the County has no jurisdiction to delve into it. By ignoring Petitioner's concerns regarding permanent improvements, the County did not exceed its jurisdiction, it limited itself to matters within its jurisdiction."

(Emphasis circuit court's.)

Thus, the court concluded, in the outdoor-mass-gathering permitting process, the county's "jurisdiction" is limited to considering whether the property owner can comply with health and safety requirements, and does not

include consideration of whether the property owner has the land use approvals required to comply with conditions for the issuance of the permit. The court also considered and rejected petitioner's challenges to the sufficiency of the evidence in support of the county's findings with respect to public safety and health requirements, and concluded that, because health and safety requirements had been met, the county was required to grant the permit.[10] Thus, the court dismissed petitioner's writ of review petition.[11]

### 4. *The declaratory judgment action*

On the same day that the circuit court rejected the petition for writ of review, petitioner filed a declaratory judgment action in the Wasco County Circuit Court, naming as defendants the county, Wolf Run, and Moonshine, and seeking a declaration that the permit had been issued in violation of land use laws. Petitioner asserts that the claim for declaratory relief is proper under ORS 197.825(3), which provides that the circuit courts retain jurisdiction to grant declaratory, injunctive, or mandatory relief in a proceeding brought to enforce the provisions of an adopted comprehensive plan or land use regulation. Petitioner also relied on LUDO section 15.040, which provides:

> "When a building or other structure is, or is proposed to be, located, constructed, maintained, repaired, altered, or used, or any land is, or is proposed to be, used in violation of this Ordinance, * * * any person whose interest in real property within the County is or may be affected by the violation, may, in addition to other remedies provided by law, institute injunction, mandamus, abatement, or other

---

[10] Relying on an opinion of the Ninth Circuit Court of Appeals in *Southern Oregon Barter Fair v. Jackson County, Oregon*, 372 F3d 1128 (9th Cir 2004), the court also concluded that, because an outdoor mass gathering implicates constitutionally protected expression, the county has no discretion to withhold a permit when an applicant demonstrates compliance with health and safety regulations. Because we uphold the court's rejection of the writ of review petition for other reasons, we need not address that additional rationale.

Petitioner does not challenge the trial court's sufficiency-of-evidence rulings on appeal, and we do not discuss those rulings further.

[11] Despite its "dismissal" of the petition for writ of review, we understand the court to have rejected petitioner's claims on the merits. No party attaches significance to the court's use of the term "dismissal" in this context, so we do not address that point further.

appropriate proceedings to prevent, temporarily or permanently enjoin, abate, or remove the unlawful location, construction, maintenance, repair, alteration or use."

In his declaratory judgment action, petitioner also sought an injunction requiring removal of unpermitted improvements and prohibiting further development on the subject property in violation of state and federal law or in the absence of required permits.

The circuit court dismissed petitioner's declaratory judgment action on July 16, 2013, for the reasons set out below. The festival was held, as scheduled, less than two weeks later.

## II. ANALYSIS

A. *The Trial Court Correctly Entered Judgment for Respondents in the Writ of Review Petition.*

Petitioner appeals both the judgment dismissing the writ of review proceeding and the judgment dismissing the declaratory judgment action. We begin our analysis with the writ of review judgment. As noted, ORS 433.750(5) provides:

"Any decision of a county governing body on an application for a permit to hold an outdoor mass gathering may be appealed to a circuit court for the county as provided in ORS 34.020 to 34.100."

In a writ of review proceeding, the circuit court is required to allow the writ "in all cases in which a substantial interest of a plaintiff has been injured" and in which

"an inferior court including an officer or tribunal other than an agency as defined in ORS 183.310(1) in the exercise of judicial or quasi-judicial functions appears to have:

"(a)   Exceeded its jurisdiction;

"(b)   Failed to follow the procedure applicable to the matter before it;

"(c)   Made a finding or order not supported by substantial evidence in the whole record;

"(d)   Improperly construed the applicable law; or

"(e)   Rendered a decision that is unconstitutional."

ORS 34.040(1). As explained above, the trial court dismissed the writ of review proceeding because, it ruled, the county was not required to determine compliance with land use laws as part of its permitting of an outdoor mass gathering and, therefore, had properly confined its jurisdiction in granting that permit. Petitioner challenges that ruling on appeal.

Before discussing the merits of petitioner's challenge, we note that the 2013 festival has been held and that the permit authorizing it has expired. That might give rise to questions concerning the justiciability of petitioner's appeal and whether it has become moot. But, as petitioner points out, the improvements to the subject property that form the basis for petitioner's objections to the permit remain, and those improvements allegedly continue to adversely affect petitioner's property by creating a fire hazard. *See Barnes v. Thompson*, 159 Or App 383, 386, 977 P2d 431, *rev den*, 329 Or 447 (1999) (even if the main issue in controversy has been resolved, collateral consequences may prevent the controversy from being moot under some circumstances). Further, it is undisputed that the festival is anticipated to be an annual event with a requirement for annual permits and that the permanent improvements already made to the property will bear on the issuance of future permits. Respondents do not argue to the contrary. Given the continuing collateral effects, we agree with petitioner that the writ of review challenge of the county's order is not moot, and we therefore proceed to the merits.

In petitioner's first assignment of error challenging the dismissal of the writ of review petition, petitioner asserts that the trial court erred in concluding that the county was not required to consider whether Wolf Run and Moonshine had the land use approvals necessary to allow them to comply with the health and safety conditions that the county imposed as a condition of granting the outdoor-mass-gathering permit.[12] Respondents do not dispute petitioner's assertion

---

[12] We reject respondents' contention that petitioner failed to preserve that argument and invited any error by conceding during colloquy that the county

that the planned improvements did not have land use approvals. Rather, they contend that the circuit court correctly interpreted the statutory provisions to preclude consideration of land use issues in the context of the outdoor-mass-gathering permitting process, and also to preclude consideration of whether land use approvals had been obtained for permanent improvements required to satisfy health and safety conditions for the permit. That dispute presents a question of statutory construction that we review as a matter of law. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

We begin with the text of the key statutory provisions. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). As we have previously explained, under ORS 433.745(1), a person seeking to organize an outdoor mass gathering must obtain a permit from the county governing body. ORS 433.750 and ORS 433.755 describe the process for applying for and reviewing an application for a permit for an outdoor mass gathering. ORS 433.750(1) provides that in considering an application for an outdoor mass gathering,

> "[t]he governing body of a county in which an outdoor mass gathering is to take place *shall issue a permit upon application when the organizer demonstrates compliance with or the ability to comply with the health and safety rules governing outdoor mass gatherings* to be regulated according to the anticipated crowd and adopted by the Oregon Health Authority."

(Emphasis added.)

Petitioner argues that a permit may be granted under ORS 433.750 only if the applicant satisfies a burden to "demonstrate compliance with or the ability to comply

---

was required by statute to grant the permit even if permanent improvements were required to satisfy safety and health concerns. We have reviewed the transcript of the hearing and, although the excerpt cited by respondents could be viewed in isolation to make that concession, when the transcript is considered in its entirety, it is clear that petitioner's counsel made the exact opposite argument: that the county's Board of Commissioners lacked authority, in the context of the hearing on the permit, to issue the permit if health and safety considerations required permanent changes to the property. And it is clear that the trial court understood petitioner's counsel to be making that argument. We therefore conclude that the issue is preserved for our review.

with the health and safety rules for outdoor mass gatherings." When necessary land use approvals have not been obtained, petitioner contends, an applicant cannot meet that burden. Petitioner further contends that, because ORS 433.745(2) provides that an outdoor-mass-gathering permit "does not entitle the organizer to make any permanent physical alterations to or on the real property," the applicant must demonstrate that any permanent improvements necessary to comply with health and safety rules are separately permitted or approved. If, petitioner contends, "compliance means breaking the law, the organizer does not have the necessary 'ability'" to comply with the health and safety requirements.

Respondents do not dispute that, necessarily, approvals for permanent improvements must be pursued through means other than the outdoor-mass-gathering permitting process. However, they contend that whether an applicant has obtained the necessary approvals is beyond the scope of the county's consideration in the context of an application for an outdoor-mass-gathering permit. In respondents' view, the part of ORS 433.750 that we have emphasized above requires the county to issue a permit for an outdoor mass gathering if the applicant shows that it can comply with the health and safety rules governing outdoor mass gatherings, regardless of whether the permanent improvements necessary to achieve compliance would require land use approvals.

As support for their construction, respondents invoke statutory context, including, specifically, ORS 197.015(10)(d) and ORS 433.763(1)(c)(A). Respondents reason that, because, under ORS 197.015(10)(d), an authorization of an outdoor mass gathering is not a land use decision, land use considerations do not come into play in the outdoor-mass-gathering permitting process. Respondents contrast that statutory provision to ORS 433.763(1)(c)(A), which applies when a gathering is anticipated to last longer than 120 hours, and under which the applicant must show that "[a]ny permits required by the applicable land use regulations have been granted." Respondents contend that if the legislature had also intended that an applicant must show necessary land

use approvals to obtain a permit for an outdoor mass gathering, it could have so stated.[13]

After considering the pertinent statutory provisions in context, we conclude that respondents are correct: ORS 433.750 does not require an applicant for an outdoor-mass-gathering permit to demonstrate compliance with land use regulations. First, the text of the pertinent statutes does not include that requirement. ORS 433.750, which prescribes what must be included in an application for an outdoor-mass-gathering permit, does not specify that the applicant must demonstrate compliance with land use regulations. And ORS 433.745 states only that the outdoor-mass-gathering permit does not, itself, authorize permanent physical alterations to the property on which the gathering will occur. It simply is silent regarding how authorization for any such alterations might be obtained.

Consideration of statutory context points to the same conclusion. ORS 433.763 applies to gatherings that are expected to last longer than gatherings that may be authorized by outdoor-mass-gathering permits. That statute expressly requires that a county considering whether to authorize a longer-duration gathering determine that "[a]ny permits required by the applicable land use regulations have been granted." ORS 433.763(1)(c)(A). We will not, as petitioner urges, read a similar requirement into ORS 433.750, which governs applications for outdoor mass gatherings; such an interpretation would conflict with our duty "not to insert what has been omitted" from that statute. ORS 174.010; *see also State v. Bailey*, 346 Or 551, 562, 213 P3d 1240 (2009) (when the legislature includes an express requirement in one statute but omits it from another, it may be inferred that the omission is deliberate).

Indeed, the distinctions between the statutes related to outdoor mass gatherings and those of longer duration

---

[13] Respondents also cite legislative history showing that when the legislature amended ORS 433.750 in 1985, it explicitly rejected text that would have required an applicant to demonstrate compliance with "any other applicable rules." As previously noted, as amended in 2015, Or Laws 2015, ch 428, § 1, ORS 433.745(2) now explicitly provides that "[a]ny permanent development on the real property must be made in accordance with any applicable state or local land use law." That amendment does not apply here, however.

suggest that the legislature contemplated that outdoor mass gatherings would be held in the open air and would not require permanent improvements of the sort that might implicate land use regulations. That is reflected both in ORS 433.735(1), which defines an "outdoor mass gathering" as one "which is held primarily in open spaces and not in any permanent structure," and in ORS chapter 197, which excludes authorization of outdoor mass gatherings from the definition of "land use decisions." ORS 197.015(10)(d). It is unsurprising, then, that applications for outdoor-mass-gathering permits are not subject to land use requirements, in contrast with applications for gatherings of longer duration. That an outdoor mass gathering may, nonetheless, sometimes involve permanent alterations does not alter the meaning or operation of the applicable statutes.

We conclude that neither ORS 433.745 nor ORS 433.750 requires an applicant for an outdoor-mass-gathering permit to demonstrate compliance with land use laws. Nor do those statutes require a county to consider an applicant's compliance with those laws in evaluating an application for an outdoor mass gathering. The circuit court therefore did not err in entering judgment for respondents in the writ of review proceeding.

B. *The Trial Court Erred in Dismissing the Declaratory Judgment Action.*

Petitioner's remaining assignments of error challenge the trial court's dismissal of his second claim for declaratory relief.[14] In that claim, petitioner alleged that

---

[14] Petitioner's second amended declaratory judgment complaint asserted two claims. The first claim alleged that the county had allowed the festival to be conducted without a "valid" mass-gathering permit and without all necessary federal and state permits required for development on the property. Petitioner sought a declaration that Wolf Run and Moonshine "shall not hold, and the County shall not allow, the [festival] without a valid mass gathering permit * * * and without all other required permits for development undertaken in preparation for or associated with the event." The court ruled that the writ of review process was the exclusive means for challenging the validity of the permit, and therefore dismissed the allegations of petitioner's first claim for declaratory relief for lack of jurisdiction. The court also held that its determination on the petition for writ of review either preclusively resolved or rendered moot petitioner's allegations in the first claim for relief seeking a declaration that Wolf Run and Moonshine shall not hold the festival in the absence of a valid permit. Petitioner does not challenge the circuit court's dismissal of the first claim for declaratory relief.

Wolf Run and Moonshine have constructed and are constructing various permanent improvements for which they did not seek county approval and for which no development permits had been issued, and that the county was allowing the development in violations of land use regulations and state law. Petitioner also alleged that the improvements would cause him irreparable harm. Accordingly, he sought a preliminary injunction prohibiting the county from allowing the development and the use of the improvements, and a permanent injunction ordering Wolf Run and Moonshine to cease development of the improvements, to desist from using the improvements, and to remove them.

In dismissing petitioner's second claim for declaratory relief, the trial court relied on three alternative grounds. We consider each in turn.

The trial court first concluded that the allegations of petitioner's second claim for declaratory judgment were "so lacking in clarity" as to not present a justiciable controversy as to whether the development was being carried out in violation of law. We have reviewed the complaint and conclude that the allegations sufficiently alleged controversies as to whether Wolf Run and Moonshine had obtained the land use approvals necessary for the development of the subject property and whether the county was allowing the development in violation of land use laws and regulations.

The trial court next concluded that petitioner's challenges presented land use issues within LUBA's exclusive jurisdiction that should have been pursued through an appeal of the county's NNV, and not through a claim for declaratory relief. ORS 197.825(1) (LUBA is vested with exclusive jurisdiction to review land use decision). Wolf Run and Moonshine continue to assert on appeal that the NNV was a final decision applying land use regulations that could have been appealed directly to LUBA.

The trial court was incorrect, because the NNV was not a land use decision reviewable by LUBA. ORS 197.015(10)(a) defines a "land use decision" as a final decision that "concerns the * * * application of" "[a] land use regulation." Arguably, the county's NNV did concern land use regulations, given that it determined that the improvements

proposed in conjunction with the festival did not violate the LUDO. But, we conclude for two reasons that the NNV did not constitute an "application" of land use regulations, as contemplated by ORS 197.015(10)(a).

First, the NNV was not issued in response to an application or other filing seeking a determination as to whether certain uses are permissible. Second, the NNV did not purport to *directly* interpret or apply land use regulations, but instead determined only whether the improvements properly were allowed pursuant to existing uses of the property. Those characteristics of the NNV are significant under *Mar-Dene Corp. v. City of Woodburn*, 149 Or App 509, 514, 944 P2d 976 (1997). In that case, a land owner appealed to LUBA from the City of Woodburn's decision not to take enforcement action against a property owner that had substantially, but not fully, complied with a previously granted access condition for development. LUBA concluded that the city's action was not a "land use decision" and was, instead, subject to the circuit court's jurisdiction over enforcement proceedings. That was so, LUBA reasoned, because the city's decision was not based on the interpretation of a previous land use decision or the application of the city's zoning ordinance but instead on a determination that a previous condition had been substantially complied with and others had not. 149 Or App at 513. LUBA observed that, "[a]lthough these could be relevant considerations during enforcement proceedings, they do not proceed from the interpretation and application of land use regulations." *Id.*

We affirmed LUBA's order, noting that the city's decision did not have the "direct effect of determining whether a use could be conducted" and was not "responsive to applications or other filings that sought determinations about whether the uses were permissible." *Id.* at 515. Rather, the city determined only whether to take action to enforce a previously imposed development condition.

Here, similarly, the NNV decided only that the challenged uses did not violate land use laws because they were allowed under the existing residential use. As in *Mar-Dene*, that decision did not have the *direct* effect of approving the challenged uses. Nor was the NNV a response

to an application or other filing that sought a determination as to whether the uses that were required as conditions for the festival permit were permissible. The NNV simply determined that the uses were permitted under previous authorizations. Under *Mar-Dene*, the NNV was therefore not a land use decision.

That conclusion comports with the part of ORS 197.015(10) that defines what is *not* a land use decision, and provides that it does not include a decision "[t]hat is made under land use standards that do not require interpretation or the exercise of policy or legal judgment[,]" ORS 197.015(10)(b)(A), or that "approves or denies a building permit issued under clear and objective land use standards." ORS 197.015(10)(b)(B). In *Tirumali v. City of Portland*, 169 Or App 241, 7 P3d 761 (2000), *rev den*, 331 Or 674 (2001), we explained that, in determining whether a decision that would otherwise qualify as a "land use decision" is exempt from the statutory definition of that term by ORS 197.015(10)(b)(A) and (B) because it does not require an interpretation of an ordinance or land use regulation or the exercise of policy or judgment, the inquiry is

> "whether [the applicable land use regulations] can plausibly be interpreted in more than one way. If so, they are ambiguous, and it would follow that the relevant city provisions are not 'clear and objective,' ORS 197.015(10)(b)(B), and that they cannot be applied without interpretation, ORS 197.015(10)(b)(A)."

*Id.* at 246.

Here, the NNV did not purport to resolve ambiguities in the county's permitting ordinances or to provide an interpretation of the ordinances or the existing permits resulting from the exercise of policy or legal judgment. *Tirumali*, 169 Or App at 246. Rather, the NNV merely determined that there had been no violation, reasoning that the parking and vehicle staging areas required by the permit were "temporary" and reciting the conclusion of planning staff that the proposed "driveway" and culvert were permitted in conjunction with the existing dwelling and residential use. It is not apparent to us how those determinations were the result of an interpretation of an ambiguous ordinance or regulation,

as described in *Tirumali*. Our conclusion that the NNV fell outside the definition of a land use decision under ORS 197.015(10)(b) is consistent with *Tirumali*'s approach to that question. In sum, we conclude that petitioner could not have pursued an appeal of the NNV to LUBA to address his concerns relating to development on the subject property.[15]

As the premise for its final alternative ground for dismissal, the trial court observed that petitioner had appealed the county's order approving the outdoor-mass-gathering permit to LUBA. The court agreed with respondents' contention that the LUBA appeal was "another action pending between the same parties for the same cause," ORCP 21 A(3). That conclusion was incorrect. The appeal to LUBA challenged the county's order granting the permit, which, as we have held, was reviewable only by writ of review. The declaratory judgment action, in contrast, challenges the development that Wolf Run and Moonshine completed to satisfy conditions for the permit but without necessary land use approvals. Thus, the LUBA appeal is not an action "for the same cause."[16]

The remaining question is whether petitioner's second claim for declaratory relief presented land use issues that were, for other reasons, beyond the trial court's jurisdiction.[17] In light of LUBA's exclusive jurisdiction over land use decisions, the circuit courts cannot engage in land use decision making or administrative review of land use decisions. But the circuit courts do have jurisdiction to grant declaratory, injunctive, or mandatory relief in a proceeding

---

[15] Nor did the county's procedures offer an opportunity for petitioner to challenge the NNV in a way that might have resulted in a land use decision. *See Doney v. Clatsop County*, 142 Or App 497, 502, 921 P2d 1346 (1996) (LUBA's jurisdiction is exclusive where a land use decisional process was available, even if not pursued.). The county's ordinance permitted only the owner of the affected property to seek administrative review of the NNV.

[16] Additionally, as the trial court correctly held, a LUBA appeal was not the proper way to challenge the county's order granting the permit, because that order was not a land use decision subject to LUBA's review. ORS 197.015(10)(d).

[17] No party contends that the NNV was a "quasi-judicial" determination that would have been subject to challenge by a writ of review under ORS 34.020. *See Hicks v. Central Point School Dist.*, 270 Or App 532, 348 P3d 307, *rev den*, 357 Or 743 (2015) (A quasi judicial function is one that involves or requires an adjudicatory process).

arising from a decision described in ORS 197.015(10)(b) or in a proceeding brought to enforce land use regulations. ORS 197.825(3)(a).[18] We said in *Doughton v. Douglas County*, 90 Or App 49, 55, 750 P2d 1174 (1988), that the purpose of ORS 197.825(3)(a) is "to enable local governments and members of the public to compel compliance with local land use legislation, under circumstances where the noncompliance is not embodied in a discrete land use decision." And more recently, we explained in *Flight Shop, Inc. v. Leading Edge Aviation, Inc.*, 277 Or App 638, 644, 373 P3d 177 (2016), that a party "may bring an enforcement action in circuit court when a violator engages in an land use contrary to a zoning ordinance and that violator 'has filed no application to allow that use or have it declared permissible through a land use decision.'" (quoting *Clackamas County v. Marson*, 128 Or App 18, 22, 874 P2d 110, *rev den*, 319 Or 572 (1994)). We conclude that petitioner's second declaratory judgment claim is such a proceeding and is authorized by ORS 197.825(3). The circuit therefore erred in dismissing it.[19]

In A155158, dismissal of plaintiff's second claim for declaratory relief reversed and remanded; otherwise affirmed. In A155511, affirmed.

---

[18] ORS 197.825(3) provides:

"Notwithstanding [LUBA's exclusive jurisdiction over land use decision], the circuit courts of this state retain jurisdiction:

"(a) To grant declaratory, injunctive or mandatory relief in proceedings arising from decisions described in ORS 197.015(10)(b) or proceedings brought to enforce the provisions of an adopted comprehensive plan or land use regulations[.]"

[19] We note that LUDO, section 15.040, also explicitly authorizes "any person whose interest in real property within the County is or may be affected" by a violation to seek separate civil relief, including an injunction.