Argued and submitted November 29, 2018; reversed and remanded for entry of corrected judgment declaring that the subject property has a preexisting-site exemption under DCC chapter 18.52, otherwise affirmed September 23, 2020

DESCHUTES COUNTY,
a political subdivision of the State of Oregon,
*Plaintiff-Appellant,*

*v.*

PINK PIT, LLC,
an Oregon limited liability company;
and Mark Latham Excavation, Inc.,
an Oregon corporation, dba Latham Excavation,
*Defendants-Respondents.*

Deschutes County Circuit Court
14CV0979; A163541

475 P3d 910

Plaintiff Deschutes County appeals from a judgment for defendants Pink Pit, LLC, and Mark Latham Excavation, Inc., dismissing the county's code enforcement action against defendants and granting defendants' request for a declaration that defendants' mining operation is a "lawful nonconforming use" under ORS 215.130(5) and not subject to land use regulation. *Held*: The Court of Appeals concluded that, although the trial court erred in determining that the subject property was a nonconforming use, the trial court correctly dismissed the enforcement action, because the property is a preexisting site under the county's code, and is therefore not subject to the county code regulations that form the basis for the enforcement action.

Reversed and remanded for entry of corrected judgment declaring that the subject property has a preexisting-site exemption under Deschutes County Code chapter 18.52; otherwise affirmed.

Dale R. Koch, Senior Judge.

John E. Laherty argued the cause and filed the briefs for appellant.

Michael W. Peterkin argued the cause for respondents. Also on the brief was Peterkin & Associates.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and Aoyagi, Judge.*

_____
* Egan, C. J., *vice* Hadlock, J. pro tempore.

EGAN, C. J.

Reversed and remanded for entry of corrected judgment declaring that the subject property has a preexisting-site exemption under DCC chapter 18.52; otherwise affirmed.

**EGAN, C. J.**

Deschutes County appeals from a judgment for defendants Pink Pit, LLC, and Mark Latham Excavation, Inc. (Latham), dismissing the county's code enforcement action against defendants and granting defendants' request for a declaration that defendants' mining operation is a "lawful nonconforming use" under ORS 215.130(5) and not subject to land use regulation. Although we disagree with the trial court's conclusion that the mining operation on the subject property is a nonconforming use, we conclude that the trial court did not err in dismissing the county's enforcement action. We therefore affirm the dismissal of the county's claim and reverse and remand for entry of a corrected declaratory judgment.

We draw our summary of the largely undisputed facts and procedural history from the record and the trial court's letter opinion. The property in dispute consists of a 30-acre portion of an approximately 75.5-acre parcel in rural Deschutes County that is zoned for surface mining (SM). A surface mine for gravel and pumice has been in existence at the site since the 1940s. In 1981, Cascade Pumice, defendants' predecessor in interest, acquired a permit from the Department of Geology and Mining Industries (DOGAMI) to mine the disputed 30 acres. Beginning in 1993, the DOGAMI permit encompassed the entire 75.5-acre site. The permit does not specify or limit the types of minerals that can be extracted and requires a "reclamation" of the subject property as required by the Deschutes County Code. The record shows that defendants are not in violation of their DOGAMI permit, either in mining or reclamation, and that 8.5 to 9.9 acres of the subject property are exempt from reclamation.

In 1974, the Land Conservation and Development Commission (LCDC) adopted Statewide Planning Goal 5 to "protect natural resources and conserve scenic, historic, and open space resources," including aggregate and mineral resources. In 1990, the county adopted ordinances to comply with its Goal 5 planning obligation for mineral and

aggregate resources.[1] Ordinance 90-014 adopted amendments to the county's SM zone and a new Surface Mining Impact Area (SMIA) combining zone.

The county's ordinances relating to mineral and aggregate resources are codified in Chapter 18.52 of the Deschutes County Code (DCC). Under DCC chapter 18.52, the SM zone, as amended by Ordinance 90-014, allows extraction, stockpiling, screening, and sizing of minerals as an outright use, "subject to a site plan review." DCC 18.52.040. Mineral and aggregate sites that held a valid DOGAMI permit at the time Deschutes County adopted its surface mining zoning and that are in an SM zone are "preexisting sites" within the meaning of the county's zoning ordinance relating to surface mining. DCC 18.52.160(B).[2] It is undisputed that the subject property held a valid

---

[1] Deschutes County Ordinance 90-025 adopted an inventory of significant mineral and aggregate sites, including the subject property, which is designated as Site 303 in the county's mineral resource inventory. *See* OAR 660-015-0000 (describing local government's obligation to inventory Goal 5 resources). The inventory listed Bend Pumice and some aggregate and sand as a mineral resource on the subject property but did not list as a mineral resource a pink volcanic pumice known as Tumalo Tuff. Ordinance 90-029 adopted an Economic, Social, Environmental and Energy (ESEE) Findings and Decision for the subject property. The ESEE decision addressed the three steps required by OAR chapter 660, division 16: It included an inventory of resources on the site, an analysis of conflicting uses, and a program to meet the goal (PTMG), in which the county determined that it would extend partial protection to the mineral resource, allowing it to be mined under special restrictions to limit the impacts on conflicting uses.

[2] DCC 18.52.160 provides:

"A. Except for preexisting and nonconforming sites, DCC 18 shall apply to all surface mining activities which occur on or after the effective date of Ordinance No. 90-014.

"B. Preexisting Sites. Mineral and aggregate sites which have a valid DOGAMI permit or exemption and/or County permit on the effective date of Ordinance No. 90-014, and which are zoned SM, are 'preexisting sites.'

"C. Nonconforming Sites. Mineral and aggregate sites which have a valid DOGAMI permit or exemption and/or County permit on the effective date of Ordinance No. 90-014, and which are not zoned SM, are 'nonconforming sites.'

"D. Registration. Operators of all preexisting and nonconforming sites shall register the sites with the Planning Division within 180 days of the effective date of Ordinance No. 90-014. The registration shall include a copy of the operator's permit or exemption and a map or legal description showing the boundaries of the surface mining area covered by the permit or exemption.

"E. Expansion.

DOGAMI permit on the effective date of Ordinance 90-014 and is located in an SM zone.

Preexisting sites are not subject to DCC 18.52, except for a requirement to register the site and in the event of an expansion of the mining operation beyond the boundaries of the surface permitted by the DOGAMI permit. DCC 18.52.160(D), (E). Nonetheless, in 1995, Cascade Pumice, then still the owner of the subject property, submitted to Deschutes County an application for site plan approval under DCC 18.52 to mine pumice on an approximately 35-acre portion of the 75.5-acre parcel. There is no evidence in the record as to why Cascade Pumice applied for site plan approval. The proposed plan provided for the slot mining of white pumice, which would entail the removal of top soil and five to 30 feet of "overburden"—material that covered the targeted white pumice to be extracted—which would be temporarily stockpiled but then replaced to the completed slot. The application included a reclamation plan that had been submitted to DOGAMI, which was required under Ordinance 18.52.130 to "demonstrate that the site can be reclaimed for a subsequent beneficial land use consistent with such subsequent use in the surface mining element of the Comprehensive Plan."

The county ultimately approved Cascade Pumice's site plan application in 1997, authorizing the slot mining of 30 acres and the removal of white pumice. The 1997 approval did not refer specifically to Tumalo Tuff, but the trial court determined that the reference to "overburden" in the 1997 site plan approval was understood to encompass Tumalo Tuff. The county did not record any restrictions on the use of the subject property under the site plan. The record shows that when in 1999, after the site plan approval, the county

---

"1. Any expansion of the surface mining activity on a preexisting site beyond the boundaries of the surface mining area covered by the DOGAMI permit or exemption or County permit, or any surface mining activity requiring a new DOGAMI or County permit, shall comply with all applicable requirements of DCC 18.

"2. Any expansion of the surface mining activity on a nonconforming site beyond the boundaries of the surface mining area covered by the DOGAMI permit or exemption or County permit, or any surface mining activity requiring a new DOGAMI or County permit, shall comply with the provisions of DCC 18.120.010."

considered an application for a residential development on a neighboring parcel, the county described the subject property as a "pre-existing site."

In 2006, Cascade Pumice sold the subject property to three limited liability companies that are the predecessors in interest to defendant Pink Pit. Cascade Pumice filed an application to transfer its operating permit to defendant Mark Latham Excavation, Inc., owned by Mark Latham, one of Pink Pit's principals. In the application, Latham agreed to reclaim the property in accordance with the reclamation plan then on file with DOGAMI. The application acknowledged that the mining operations were subject to an existing mining permit.

The procedural history at this point becomes complex and lengthy in ways that do not bear on our analysis of the issues on appeal. To briefly summarize, in 2007, the county informed defendants that it intended to initiate an enforcement action against the subject property, asserting that defendants were engaged in activities beyond the scope of the 1997 site plan approval by processing minerals on site and removing overburden from the property. In response, defendants submitted an application for a site plan and conditional use approval to expand mining operations on the subject property and to process materials on site. Defendants' counsel noted at the time that, although defendants were not asserting that the subject property was a preexisting site, they were not waiving that status.

The application was litigated over a five-year period, resulting in two LUBA appeals and two petitions for judicial review, *Mark Latham Excavation v. Deschutes County*, 250 Or App 543, 281 P3d 644 (2012); *Hoffman v. Deschutes County*, 237 Or App 53l, 240 P3d 79, *rev den*, 349 Or 479 (2010). Ultimately, in 2012, the county granted a site plan approval that defendants chose not to pursue. Thus, the site plan approval remained unchanged from the original approval granted to Cascade Pumice in 1997.

In 2014, the county received complaints that defendants were mining in violation of the 1997 site plan approval. After investigation, the county determined that it was likely

that defendants were violating the terms of the 1997 site plan by, among other conduct, removing overburden. The county brought this action to enforce the terms of the 1997 approval.

This time, defendants did not seek to obtain a conditional use permit or to modify the 1997 site plan. Rather, they asserted as an affirmative defense that they are not bound by the 1997 approval, because the subject property is a preexisting site under DCC 18.52.160(B) that is not subject to regulation under DCC chapter 18.52, or because the use of the subject property is a lawful "nonconforming use" under ORS 215.130(5), which provides that "the lawful use of any building, structure or land at the time of the enactment or amendment of any zoning ordinance or regulation may be continued." As a counterclaim, defendants sought a declaration that the subject property constitutes a preexisting site as defined by DCC 18.52.160(B) or that the use of the subject property is a lawful nonconforming use under ORS 215.130(5), and, therefore, is not subject to land use regulation. Defendants presented evidence that the subject property has been mined since the 1940s and that Tumalo Tuff had been excavated and removed from the subject property since at least the 1970s, before the 1990 amendments to the SM zone by Ordinance 90-014.

The county did not dispute the site's "preexisting-site" status but raised affirmative defenses to defendants' declaratory judgment claim, asserting that defendants had waived or were barred by laches or estoppel from asserting that they are exempt from the requirements of DCC chapter 18.52 by having submitted the subject property to the county's land use authority through the site plan applications and approvals and by their words and actions. Among the "words and actions" on which the county relied were defendants' repeated acknowledgments during the litigation relating to defendants' 2007 application that Tumalo Tuff was "overburden." The county further asserted that, as a matter of law, the site lost any preexisting or nonconforming-use status when Cascade Pumice submitted the site to land use regulation by bringing the site into compliance with existing land use regulations under the 1997 site plan approval.

The case went to trial before a reference judge pursuant to ORS 3.305. In its reference report, the trial court determined that

> "[u]nder DCC 18.52.160] it is clear that the Ordinance did not apply to mineral and aggregate sites which had a valid DOGAMI permit at the time of the adoption of the Ordinance. As discussed above, at that point in time 30 acres were covered by the valid 1981 DOGAMI permit."

But the trial court did not reach defendants' contention that the subject property was a preexisting site under the county's ordinance. Rather, the court concluded that the extraction of Tumalo Tuff was a lawful nonconforming use under ORS 215.130(5). The court agreed with the county's position that Tumalo Tuff had previously been viewed as "overburden" rather than a targeted mineral to be extracted; however, the court found that nothing in the DOGAMI permit or reclamation plan prohibited the removal of Tumalo Tuff from the site. The court thus concluded that the use of the 30 acres for the extraction and removal of Tumalo Tuff was a lawful nonconforming use under ORS 215.130(5).

The court further rejected the county's contentions that defendants had waived their "pre-existing rights as a lawful nonconforming user of the property prior to 1990," or were barred by estoppel or laches. Thus, the court held that defendants were permitted to continue extracting Tumalo Tuff on the 30-acre portion of the site without land use approval, entered a judgment for defendants on their declaratory judgment counterclaim, and dismissed the county's enforcement action.[3]

The county contends that the trial court erred.[4] Under ORS 197.825(1), LUBA has "exclusive jurisdiction to

---

[3] The trial court's declaration stated, in part:

"1. Defendants can continue their surface mining operation as lawful nonconforming use, under ORS 215.130, on the 30 acres of the 'Subject Property' covered by the l98l DOGAMI permit;

"* * * * *

"3. Any surface mining operations outside of the 30 acres of the Subject Property covered by the 1981 DOGAMI permit are subject to Deschutes County land use planning rules, including Permit No. 09-0124."

[4] As noted by defendants, most of the county's assignments of error are not proper assignments because they are not directed at specific rulings of the trial

review any land use decision or limited land use decision of a local government, special district or a state agency." In its first assignment, the county contends that the trial court lacked subject matter jurisdiction to consider defendants' declaratory judgment claim, because the issue of the site's preexisting or nonconforming status could have been considered and, therefore, should have been raised in one of the two previous land use proceedings before LUBA. Defendants counter that they had no reason to raise the site's preexisting or nonconforming status in the earlier litigation relating to the site plan approval, which did not contest defendants' use of the property, and that the trial court had subject matter jurisdiction under ORS 197.825(3)(a), which provides:

> "Notwithstanding subsection (1) of this section, the circuit courts of this state retain jurisdiction:
>
> "(a) To grant declaratory, injunctive or mandatory relief in proceedings arising from decisions described in ORS 197.015(10)(b) [listing excluded decisions] or proceedings brought to enforce the provisions of an adopted comprehensive plan or land use regulations[.]"

court. Rather, the assignments merely argue against the trial court's reasoning for its conclusion that defendants were entitled to a declaration that the extraction of Tumalo Tuff on 30 acres is not subject to the county's land use planning rules. With the exception of the assignment of error challenging the trial court's subject matter jurisdiction, we treat the assignments together as a single assignment challenging the declaratory judgment ruling.

Defendants note further that the county's arguments relate only to defendants' declaratory judgment counterclaim and that the county has not explicitly assigned error to the trial court's dismissal of the county's enforcement action. Defendants are correct that the dismissal of the county's claim should have been separately assigned as error and is not implicitly encompassed in the assignments relating to the declaratory judgment counterclaim. However, even if there had been a separately assigned error, in light of our disposition of the declaratory judgment claim, the trial court's ruling dismissing the county's enforcement action would also be affirmed.

The county asks us to review *de novo* its second assignment, in which it asserts that the trial court erred in rejecting its defense that defendants had waived their right to assert a nonconforming use by submitting to the county's land use authority. We do not accept the county's argument that the defense of waiver presents an equitable matter that would be within the court's discretion to review *de novo*; but even if it were, we would decline to exercise our discretion to apply such review. See ORS 19.415(3)(b) (stating that we have discretion to apply *de novo* review in equitable actions); ORAP 5.40(8)(c) (stating that we will exercise that discretion only in exceptional cases).

Whether the circuit court had subject matter jurisdiction to address defendants' declaratory judgment counterclaim is a question of law that we review for errors of law. *Merten v. Portland General Electric Co.*, 234 Or App 407, 413, 228 P3d 623, *rev den*, 348 Or 669 (2010).

We agree with defendants that the trial court had jurisdiction under the statute. As we held in *Thomas v. Wasco County*, 284 Or App 17, 37, 392 P3d 741 (2017), *rev den*, 262 Or 666 (2018), although the circuit courts cannot engage in land use decision-making or administrative review of land use decisions, ORS 197.825(3)(a) provides the circuit courts with jurisdiction to grant declaratory, injunctive, or mandatory relief in a proceeding brought to enforce land use regulations. We agree with defendants that the circuit court had jurisdiction to address defendants' declaratory judgment counterclaim in the context of the county's action to enforce the 1997 site plan approval.

The county's arguments relating to the merits of defendants' declaratory judgment counterclaim present legal issues concerning the interpretation of ORS 215.130(5) and DCC 18.52.160. We therefore review the trial court's legal conclusions for legal error and its factual findings for whether those findings are supported by any evidence in the record. *State v. Serrano*, 346 Or 311, 326, 210 P3d 892 (2009) (questions of statutory construction reviewed for errors of law); *Vukanovich v. Kine*, 268 Or App 623, 633, 342 P3d 1075, *adh'd to as modified on recons*, 271 Or App 133, 349 P3d 567 (2015) (court's factual findings reviewed for whether they are supported by any evidence in the record).

We address first the county's contention that the trial court erred in rejecting its argument that the subject property lost its status as a legal nonconforming use when defendants and their predecessors submitted to the county's land use authority under DCC chapter 18.52. The county does not describe the way in which the use of the subject property does not currently conform to the county's land use regulations but argues only that the subject property lost "any" nonconforming use when the county granted Cascade Pumice's site plan approval in 1997. We need not decide whether the subject property lost "any" nonconforming use,

because we conclude that surface mining on the subject property was not a nonconforming use.

ORS 215.130(5) provides:

"The lawful use of any building, structure or land at the time of the enactment or amendment of any zoning ordinance or regulation may be continued. *** Except as provided in ORS 215.215, a county shall not place conditions upon the continuation or alteration of a use described under this subsection when necessary to comply with state or local health or safety requirements, or to maintain in good repair the existing structures associated with the use. A change of ownership or occupancy shall be permitted."

The statute describes an exception to the application of zoning ordinances for a use that is inconsistent with zoning but that was lawfully in existence before the enactment or amendment of the ordinance, which our case law describes as a "nonconforming use." *See Polk County v. Martin*, 292 Or 69, 71, 636 P2d 952 (1981) (describing history of nonconforming use and vesting); *Clackamas County v. Holmes*, 265 Or 193, 196-97, 508 P2d 190 (1973) ("A nonconforming use is one which lawfully existed prior to the enactment of a zoning ordinance and which may be maintained after the effective date of the ordinance although it does not comply with the use restrictions applicable to the area.").

Whether defendants' use was inconsistent with current zoning regulations depends on an interpretation of the Deschutes County Code. In our interpretation of the Deschutes County Code, we apply the same rules of construction as those applicable to the interpretation of statutes. *City of Eugene v. Comcast of Oregon II, Inc.*, 359 Or 528, 540, 375 P3d 446 (2016). As noted, the subject property is zoned SM, for surface mining, and the rules for compliance with that zone are set out in DCC chapter 18.52. There is no dispute that, prior to amendment of the SM zone in 1990, the subject property was zoned SM and was lawfully being mined as permitted in that zone. In the SM zone, certain uses "are permitted outright, subject to a site plan review as provided in DCC 18.52.040:

"A.  Extraction of minerals.

"B.  Stockpiling and storage of minerals.

"C.   Screening, washing and sizing of minerals.

"D.   Sale of minerals and mineral products extracted and produced on the parcel or contiguous parcels in the same ownership.

"E.   Buildings, structures, apparatus, equipment and appurtenances necessary for the above uses to be carried on."

DCC 18.52.040. All of defendants' current uses on the subject property fall within the uses permitted outright in a SM zone by DCC 18.52.040. Properties within the SM zone may carry out all of the above uses outright, subject to approval of a site plan. However, as we have noted, the county's code exempts from DCC chapter 18.52 those sites that are "preexisting" or "nonconforming." DCC 18.52.160. Preexisting sites are therefore exempt from the county's requirement for site plan approval, except upon expansion of the site. *See* DCC 18.52.070. ("Site plan review and final approval of a site plan shall be required before the commencement of any use which requires site plan review under DCC 18.52.040 and 18.52.050(B), and before any expansion of a preexisting or nonconforming site under DCC 18.52.160.").

As defined in DCC 18.52.160, a preexisting site is a site that has "a valid DOGAMI permit or exemption and/or County permit on the effective date of Ordinance No. 90-014, and which [is] zoned SM." The trial court found that the subject property is zoned SM and that surface mining operations on the subject property have been conducted under a valid DOGAMI mining permit since at least 1981, which predates the county's enactment of Ordinance 90-014. The trial court's findings support only the conclusion that the subject property is a preexisting site within the meaning of DCC 18.52.160, and we so conclude.[5] Because the subject

---

[5] The county asserts that whether the subject property is a preexisting site within the meaning of DCC 18.52.160 "is not in play." It is true that the trial court did not reach defendants' argument or make an explicit finding as to whether the subject property is a preexisting site. However, the county's challenge to the trial court's determination that defendants are not subject to the 1997 site plan necessarily puts at issue the correct interpretation of DCC 18.52.160 and the question whether the subject property is exempt from the 1997 site plan under DCC chapter 18.52 as a preexisting site. *See Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) ("In construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties.").

property is a preexisting site, it is not subject to the requirements for a site plan approval, except to expand the site.[6] Thus, the trial court correctly concluded that the subject property is not bound by the 1997 site plan to the extent that it might limit the extraction, processing, and removal of Tumalo Tuff on the 30 acres.[7]

But we must correct the trial court's declaratory judgment in one respect. The court's declaration states that the subject property is a *nonconforming use* under ORS 215.130(5). However, a use that is lawful under existing zoning is not a nonconforming use. *See Bergford v. Clackamas County*, 15 Or App 362, 367, 515 P2d 1345 (1973) (holding that a nonconforming use is a use that has been determined to be contrary to a zoning plan). Because defendants' use of the subject property for mining is permitted under the current SM zone, it is not a nonconforming use.[8] Thus, the subject property has not had nonconforming use status. We therefore reject the county's contention that the subject property lost "any" nonconforming use status when defendants or their predecessors sought a site plan approval.

The county contends that defendants impliedly waived any claim that the subject property is not subject to regulation by the county when they or their predecessors submitted a request for a site plan approval and when, through the years of land use litigation, they acknowledged the applicability of the 1997 site plan approval and that it prohibited the removal of "overburden," at the time understood to include Tumalo Tuff. By acceding to that site plan, the county contends, defendants have waived their

---

[6] To avoid an "expansion" of the site that would have necessitated a site plan approval, the trial court limited its declaration to the 30 acres that it determined were subject to the 1981 DOGAMI permit and concluded that it did not encompass the entire 75.5 acres.

[7] We note that defendants stated in their briefs and at oral argument that they do not seek exemption from the county's requirements relating to health, safety, and the environment; they challenge only those restrictions that limit the minerals that may be extracted, processed, and removed from the subject property.

[8] We note, further, that DCC 18.52.160 defines "nonconforming sites" as "[m]ineral and aggregate sites which have a valid DOGAMI permit or exemption and/or County permit on the effective date of Ordinance No. 90-014, *and which are not zoned SM*[.]" (Emphasis added.)

right to now assert that Tumalo Tuff is not overburden but a targeted mineral that can be excavated, processed, and removed from the subject property.

The waiver of a statutory right requires an "intentional relinquishment or abandonment of a known right or privilege," *Assn. of Oregon Corrections Emp. v. State of Oregon*, 353 Or 170, 183, 295 P3d 38 (2013), which, in turn, requires "a clear, unequivocal, and decisive act of the party showing such a purpose[.]" *Id.* There is no evidence of an affirmative waiver of the preexisting-site exception by defendants or their predecessors. If a waiver is to be implied from the circumstances, it is a question of fact for the trier of fact to determine "whether the conduct of the party evidences a conscious and voluntary abandonment of some right or privilege." *Great American Ins. v. General Ins.*, 257 Or 62, 72, 475 P2d 415 (1970); (internal quotations omitted); *see also Samuels v. Mack-International etc. Corp.*, 128 Or 600, 605, 275 P2d 596 (1929) (a question of waiver is one of fact). We review the trial court's findings for any evidence in the record. *See Illingworth v. Bushong*, 297 Or 675, 694, 688 P2d 379 (1984) ("[A]n appellate court cannot reject the findings of fact of the trial court unless the appellate court can say affirmatively that there is no evidence to support the fact found by the trial court.").

The trial court here found that there had been no waiver through conduct, and we conclude that that finding is supported by evidence in the record. The Deschutes County Code does not state that the county's approval of a site plan waives a property's preexisting-site status. There is no evidence that when Cascade Pumice filed its site plan approval application in 1995 or when defendants filed their application in 2007, they sought to waive the property's preexisting-site status. In fact, as noted, the record shows that in 2007, defendants explicitly reserved the right to raise the subject property's preexisting-site status at a later time. We conclude that there is evidence in the record that supports the trial court's determination that defendants or their predecessors did not waive the subject property's preexisting-site status through their conduct in seeking a site plan approval.

The county contends further that the trial court erred in rejecting its argument that defendants should be barred by laches from asserting that the subject property is a preexisting site. Laches is an equitable defense that applies to equitable claims. *Corvallis Sand & Gravel v. Land Board*, 250 Or 319, 325, 439 P2d 575 (1968) ("[L]aches may not be used as a defense against a claim purely legal."). To prevail, the party asserting laches must establish that (1) the party against whom it is asserted delayed raising the claim for an unreasonable length of time; (2) with full knowledge of all relevant facts (and laches does not start to run until such knowledge exists); (3) resulting in such substantial prejudice to the party asserting it that would make it inequitable for the court to grant the requested relief. *Mattson v. Commercial Credit Business Loans*, 301 Or 407, 419, 723 P2d 996 (1986); *Stephan v. Equitable S & L Assn.*, 268 Or 544, 569, 522 P2d 478 (1974); *The Hoag Living Trust dated February 4, 2013 v. Hoag*, 292 Or App 34, 43, 44, 424 P3d 731 (2014). Laches thus has no application in a declaratory judgment proceeding in which the relief sought is purely legal. *See Ken Leahy Construction, Inc. v. Cascade General, Inc.*, 329 Or 566, 571, 994 P2d 112 (1999) ("Declaratory judgment proceedings can be legal or equitable in nature, depending on the nature of the case and the relief sought.").

The parties appear to assume that defendants' declaratory judgment claim is equitable and do not dispute the potential applicability of laches. Assuming, without deciding, that defendants' declaratory judgment claim is one that should be treated as equitable, we conclude that the county has not met its burden to show that laches should apply. In the first place, the delay in raising the claim that the subject property is a preexisting site was not unreasonable. Before the county brought this enforcement action seeking to restrict defendants' use of the subject property, defendants had no reason to seek a declaration of the subject property's preexisting use. *See Hammond v. Hammond*, 296 Or App 321, 334, 438 P3d 408 (2019) ("[o]nly after an actual repudiation occurs or an adverse claim is asserted against the owner's interest is a landowner required to take legal action to protect that interest") (citing *Eichner v. Anderson*, 229 Or App 495, 500, 212 P3d 521, *rev den*, 347

Or 258 (2009)). Additionally, the county has not shown that it has suffered prejudice as a result of defendants' failure to earlier assert the subject property's site status. For both of those reasons, we agree with the trial court that the county has not established that laches is applicable.

We reject the county's remaining arguments without further discussion.

Reversed and remanded for entry of corrected judgment declaring that the subject property has a preexisting-site exemption under DCC chapter 18.52; otherwise affirmed.